IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

IKEMEFULA CHARLES IBEABUCHI, *Appellant.*

No. 1 CA-CR 18-0098
FILED 2-25-2020

Appeal from the Superior Court in Maricopa County
No. CR1999-095310
The Honorable John R. Doody, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

## OPINION

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

**C R U Z**, Judge:

**¶1**          The Sixth Amendment guarantees the right to self-representation.  In this case, we hold that when a defendant is competent to stand trial, but lacks the mental capacity to conduct that trial himself, the superior court may, over his objection, appoint counsel to undertake his representation or deny his motion to represent himself.

**¶2**          Ikemefula Charles Ibeabuchi appeals from the revocation of his probation and imposition of a presumptive 3.5 years' prison term for attempted sexual assault.  He argues the superior court erred by denying his motion to waive counsel and represent himself.  We affirm.

### FACTS AND PROCEDURAL HISTORY

**¶3**          In July 2002, Ibeabuchi was convicted of an offense in Nevada and was sentenced to prison.  Additionally, in Arizona in February 2003, Ibeabuchi pled guilty to attempted sexual assault, a class 3 felony, and to sexual abuse, a class 5 felony.  In May 2003, the superior court sentenced Ibeabuchi to two years' imprisonment on the sexual abuse count and lifetime probation on the attempted sexual assault count.

**¶4**          Ibeabuchi was released from prison and subsequently reported to the Maricopa County Adult Probation Department to begin his probationary term.

**¶5**          In 2016, the superior court found Ibeabuchi had violated probation terms and reinstated him to lifetime intensive probation with continuing sex-offender conditions.  Later, the Probation Department filed a second petition to revoke Ibeabuchi's probation, citing new violations of intensive-probation and sex-offender conditions.

**¶6**          Ibeabuchi was arrested pursuant to a probation warrant.  The superior court granted several continuances of the resulting hearing when Ibeabuchi refused to be transported to court or refused to participate in the

proceedings when he was transported against his will. After Ibeabuchi refused to meet with his court-appointed attorney, the superior court granted a motion for a mental health examination to determine whether he was competent to proceed with a probation violation hearing. Ariz. R. Crim. P. 11.2. One of the three experts who evaluated Ibeabuchi opined that he was "illogical, irrational, lacked insight into his condition, [and] he was not reality based in his thinking." Two other experts, however, concluded Ibeabuchi was competent to stand trial. The court found Ibeabuchi competent to proceed to the violation hearing, which was set pursuant to Arizona Revised Statutes ("A.R.S.") section 13-4510(B).

¶7 After Ibeabuchi refused to attend no fewer than eight court hearings, the court ordered Ibeabuchi, who had remained in custody, to be brought to court by all means necessary. At the next scheduled hearing, Ibeabuchi was brought to the courthouse, but he refused to enter the courtroom, asserting that as a result of a pending appeal regarding the first probation violation finding, the court lacked jurisdiction to hear the instant violation of probation matter. Ibeabuchi's discontent only grew when he learned that the court had permitted his counsel in the first probation violation matter to withdraw and appointed him counsel for the instant probation violation proceedings. In protest, Ibeabuchi refused to participate in further proceedings for a time.

¶8 Eventually, before the probation violation hearing, Ibeabuchi filed a motion to represent himself. Ibeabuchi's motion was largely incoherent; he continued to object to the court's order allowing his counsel in the first probation violation proceedings to withdraw. After reviewing its own file, the court engaged Ibeabuchi in a colloquy to determine the basis for his request and also to ascertain whether Ibeabuchi was competent to waive his right to counsel and represent himself. Ibeabuchi explained he wanted to represent himself because he "had a run-in with [his] attorneys" and believed he could "help [himself] better." His reference to a conflict with counsel, however, was not germane to the court's line of questioning. Instead, Ibeabuchi's response continued to refer to the attorneys he had retained in the first probation violation proceedings.

¶9 In addition, Ibeabuchi explained that he thought the court did not have jurisdiction over him, and said he had discovery supporting that argument. Specifically, Ibeabuchi believed that because he had filed a notice of appeal, he could not be subjected to violation of probation proceedings before the superior court, even though he continued to be on probation. He also complained that his appointed attorney refused to file a motion based on this incorrect jurisdictional argument.

¶10 After further questioning, the court found Ibeabuchi's answers were "not responsive to [the court's] questions and that some of the things that [Ibeabuchi] said [were] at variance with what's been in the record." The court noted that case law required a "higher degree of competence in order for the person to represent themselves." In denying Ibeabuchi's motion to represent himself, the superior court found Ibeabuchi had failed to respond appropriately to questions, demonstrated in court that he did not understand applicable law, had failed to comply with court orders, filed nonsensical pleadings, and had refused numerous times to be transported to court for hearings. Based on these findings, the court concluded it was not likely that Ibeabuchi could competently represent himself, denied the motion, and allowed appointed counsel to continue to represent him.

¶11 The superior court held the probation violation hearing a few weeks later, at which Ibeabuchi was represented by counsel and testified. The court found the State proved Ibeabuchi violated several terms and conditions of probation. As a result, the superior court revoked Ibeabuchi's probation and imposed a presumptive 3.5 years' prison term for his attempted sexual assault conviction and granted 505 days of presentence incarceration credit.

¶12 Though he was represented by counsel, Ibeabuchi filed a *pro se* notice of appeal from the revocation of his probation. Three weeks later, Ibeabuchi's public defender filed a second notice of appeal challenging the revocation proceeding and sentence. Ibeabuchi then filed a motion to represent himself on appeal. This court denied Ibeabuchi's motion as untimely.

¶13 We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031 and -4033(A).

## DISCUSSION

¶14 On appeal, Ibeabuchi does not challenge the superior court's ruling that he violated terms of his probation. Instead, he contends that, because the superior court found him competent to stand trial, the court committed structural error by denying his request to represent himself at the probation violation hearing.[1] We disagree.

---

[1] Although the proceeding at which Ibeabuchi sought to represent himself was a violation of probation hearing, not a trial on the original

¶15        We review for an abuse of discretion a superior court's ruling that a criminal defendant is not competent to represent himself. *State v. Gunches*, 225 Ariz. 22, 24, ¶ 8 (2010). We look to whether reasonable evidence supports the superior court's finding, considering the facts in the light most favorable to sustaining the superior court's ruling. *State v. Glassel*, 211 Ariz. 33, 44, ¶ 27 (2005). "However, regardless of the standard of review, an erroneous failure to accord a defendant his properly asserted right to represent himself when he is competent to waive counsel in a criminal case is structural error requiring reversal without a showing of prejudice." *State v. McLemore*, 230 Ariz. 571, 575-76, ¶ 15 (App. 2012).

¶16        Both the United States and Arizona Constitutions recognize an individual's right to forgo legal counsel and represent himself against allegations of criminal conduct. U.S. Const. amends. VI, XIV; Ariz. Const. art. 2, § 24; *see also Faretta v. California*, 422 U.S. 806, 807 (1975); *Gunches*, 225 Ariz. at 24, ¶ 9. However, the Supreme Court has recognized that some defendants deemed competent to stand trial may, at the same time, be "unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Indiana v. Edwards*, 554 U.S. 164, 175-76 (2008). These defendants are sometimes referred to as "gray-area" defendants. *Id.* at 172-73. Such defendants may be unable to represent themselves because, while they are competent to stand trial in that they have "sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against [them]," *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotations omitted), self-representation at trial requires more than that. Self-representation at trial requires the mental capacity to minimally participate in the process as an advocate. An advocate must have sufficient mental capacity to understand the nature of the dispute; formulate a defense strategy; and engage with the court, counsel, witnesses and, in some cases, the jury. *See Edwards*, 554 U.S. at 175-77. By contrast, competency to stand trial requires the defendant only understand the proceedings and make decisions about his case as the matter progresses. *See Dusky*, 362 U.S. at 402. Without a doubt, the role of advocate requires more in the way of mental capacity.

¶17        In *Edwards*, the Supreme Court addressed whether a trial court may deny self-representation to a criminal defendant who is mentally

_____

charges, there is not a material difference between the two hearings for purposes of our analysis of his right to self-representation.

competent to stand trial but "not mentally competent to conduct that trial himself." 554 U.S. at 167. The Supreme Court stated,

> In certain instances an individual may well be able to satisfy *Dusky*'s mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel. *See, e.g.*, N. Poythress, R. Bonnie, J. Monahan, R. Otto, & S. Hoge, Adjudicative Competence: The MacArthur Studies 103 (2002) ("Within each domain of adjudicative competence (competence to assist counsel; decisional competence) the data indicate that understanding, reasoning, and appreciation [of the charges against a defendant] are separable and somewhat independent aspects of functional legal ability."). *See also* [*McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984)] (describing trial tasks as including organization of defense, making motions, arguing points of law, participating in *voir dire*, questioning witnesses, and addressing the court and jury).

*Edwards*, 554 U.S. at 175-76.

¶18 Then, while a defendant need only show the ability to rationally communicate with counsel and a rational and factual understanding of the proceedings to stand trial, *Dusky*, 362 U.S. at 402, to represent himself at that trial, the superior court may require that the defendant also have sufficient ability to manage the most basic of trial tasks. *McKaskle*, 465 U.S. at 174. *Edwards* also explained that "insofar as a defendant's lack of capacity threatens an improper conviction or sentence, self-representation in that exceptional context undercuts the most basic of the Constitution's criminal law objectives, providing a fair trial." 554 U.S. at 176-77; *see also Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000) ("Even at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."). Trials must be both fair and "appear fair to all who observe them." *Edwards*, 554 U.S. at 177 (quotation omitted). The Constitution allows the superior court to assess a defendant's mental capacities and "to insist upon representation by counsel for [gray-area defendants]." *Id.* at 178.

¶19 In *Gunches*, the Arizona Supreme Court acknowledged *Edwards*' holding, but the issue of whether Arizona courts may apply a heightened standard of competency for gray-area defendants invoking

their right of self-representation was not before that court and, therefore, was not decided. 225 Ariz. at 25, ¶ 11. The issue is now squarely presented here, and we hold that, pursuant to *Edwards*, when a criminal defendant is mentally competent to stand trial, but not mentally competent to conduct that trial or hearing himself, the superior court may, in its sound discretion, deny the defendant the right to represent himself.

**¶20** We now consider whether the superior court acted within its discretion in denying Ibeabuchi's request to represent himself.[2]

**¶21** The record contains sufficient evidence to support the superior court's ruling that Ibeabuchi was a gray-area defendant and "unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Gunches*, 225 Ariz. at 25, ¶ 12 (quoting *Edwards*, 554 U.S. at 175-76). During the court's colloquy with Ibeabuchi, the court noted that Ibeabuchi's answers were "not responsive to [the court's] questions and that some of the things [Ibeabuchi] said [were] at variance with what's been in the record." Ibeabuchi's answers to the court's questions were, at times, non-responsive and showed he did not understand the history of his case.

**¶22** Ibeabuchi's exchange with the court also showed his misunderstanding of the law. Specifically, in reviewing Ibeabuchi's May 5, 2017 *pro se* motion regarding the withdrawal of previously retained counsel, the court noted that it was nonsensical.[3] Earlier in his case, Ibeabuchi was

---

[2] Ibeabuchi argues for the first time on appeal that the Arizona Constitution provides greater protection of the right to self-representation than the United States Constitution. Accordingly, the argument was not timely raised and is deemed waived. Ariz. R. Crim. P. 31.10(a)(7)(B); *see Cont'l Lightning & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011) (providing that "legal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits," and if not, they are waived on appeal).

[3] The motion stated:

This Motion is made pursuant to the Arizona Rules of Civil Procedure, 58(a), for signed Orders of the Judge, and timely, pursuant to the <u>Receipt of Copy</u>, from Public

represented by private trial counsel. That attorney was allowed to withdraw from further representation in 2016, once the terms of the representation were satisfied. Over a year later, once Ibeabuchi found himself in probation violation proceedings, he persisted in filing repeated motions objecting to the withdrawal of that same trial counsel, even though the matter of that counsel's representation was long resolved.

**¶23** Ibeabuchi's noncompliance with court orders requiring his transportation to court for probation violation hearings further illustrates that Ibeabuchi lacked the mental state required to represent himself. As the court noted, Ibeabuchi's approach to dealing with an adverse ruling on his motion regarding his prior counsel's withdrawal was to refuse to be

Defender, James Harris, esq. on April 19, 2017, in the Courtroom of MQPV3.

Notwithstanding the erroneous statement of the MOTION TO WITHDRAW AS COUNSEL, filed electronically on "8/12/2016 3:45:14 PM, (Citing, Pg. 1. ln. 16-18, of the attached, Evidence, herein, for review), which states that, "COMES NOW the Defendant, by and through counsel undersigned, and hereby moves to withdraw as counsel of record for all future proceedings in the matter."

This error concluded that the defendant submitted and filed, the foregoing, MOTION, therein, and wished to "withdraw as counsel of record…" And, further, on line 19, of the same page, misrepresented the Name of the Client to the Retainer, as executed of December 28, 2015, for Post-Conviction Relief, See, Ikemefula Ibeabuchi, and upon, which the Earned Fee, may apply, therein, at-law.

Therefore, Counsel's erroneous motion may not be permitted, for the foregoing Reasons, and, Should be directed to file an Amended Motion to Clarify, these errors, before the Honorable Court, may proceed, with the Hearings, scheduled for May 3, 2017 and, May 8, 2017, of, Petition to Revoke Probation, (Non-witness and Witness Hearings), and, by and through the Public Defender James Harris, esq. at-law, as counsel for Petitioner, IBEABUCHI, IKEMEFULA CHARLES.

Wherefore, the defendant, respectfully, requests that his Objection be granted, in the premises and the law.

transported to his probation violation hearings. His absences resulted in several continuances of the probation violation hearing and stalled resolution of the allegations for months. In denying Ibeabuchi's motion to represent himself at the probation violation hearing, and by appointing counsel over his own objection, the superior court ensured Ibeabuchi received a fair probation violation hearing and helped maintain the integrity of the proceeding. On this record, we conclude the court did not abuse its discretion when it determined Ibeabuchi was a gray-area defendant unable to competently defend himself in his own probation violation hearing and appointed counsel to undertake his representation over Ibeabuchi's objection.

## FUNDAMENTAL ERROR REVIEW

**¶24** Without elaboration, Ibeabuchi argues his structural error analysis also supports his prayer for relief under fundamental error review. "A defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, or (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

**¶25** Imposition of legal counsel to assist in defending the violation of probation proceedings was not error, let alone fundamental error. Under the first prong, an error goes to the foundation of a case "if it relieves the prosecution of its burden to prove a crime's elements, directly impacts a key factual dispute, or deprives the defendant of constitutionally guaranteed procedures." *Id.* at 141, ¶ 18. Appointing an attorney to Ibeabuchi had no relation to or effect on proving the elements of his probation violation or the facts surrounding his probation violation. It also did not deprive Ibeabuchi of constitutionally protected procedures, and instead was intended to ensure his constitutional rights were safeguarded.

**¶26** Additionally, the second prong was not met, as Ibeabuchi was not deprived "of a constitutional or statutory right necessary to establish a viable defense or rebut the prosecution's case." *Id.* at ¶ 19. Ibeabuchi's inability to represent himself did not prevent him from establishing a defense or rebutting prosecution. Ibeabuchi was assigned counsel to present his defense, and he fails to allege that his appointed counsel failed to competently do so. Finally, under the third prong, there is nothing in the record to indicate that the appointment of an attorney for Ibeabuchi led to an inability for him to receive a fair proceeding.

## CONCLUSION

¶27        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA