NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

UMAR SHUJA QURESHI, *Appellant.*

No. 1 CA-CR 19-0536
No. 1 CA-CR 19-0537
(Consolidated)

FILED 11-5-2020

Appeal from the Superior Court in Maricopa County
No. CR2013-427046-001
No. CR2014-001042-001
The Honorable George H. Foster, Jr., Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1        Umar Shuja Qureshi appeals his convictions and sentences for one count of aggravated assault, one count of manslaughter, and two counts of endangerment.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

I.        CR2013-427046

¶2        In 2012, T.K. was driving southbound on McClintock Road when Qureshi, driving northbound in a Ford Mustang, crossed into T.K.'s lane of traffic.  T.K. changed lanes in an attempt to avoid a collision, but Qureshi moved into the same lane, mirroring T.K.'s movements.  The Mustang collided with T.K.'s vehicle nearly head-on at a speed of eighty-eight miles per hour.  Just before impact, the Mustang sped up.

¶3        T.K. was badly injured and was hospitalized for seventeen days following the collision.  He underwent stomach surgery to remove part of his lower intestines and lung treatments to remove blood clots.  He had to learn to walk again.

¶4        A grand jury indicted Qureshi for one count of aggravated assault, a dangerous offense.  After a trial, the jury found Qureshi guilty as charged and found in aggravation serious physical injury and emotional or financial harm to the victim.  The superior court sentenced Qureshi to ten years in prison.  Qureshi timely appealed, and we have jurisdiction pursuant to Arizona Constitution Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

II.        CR2014-001042

¶5        In 2013, K.F. was driving a Honda Odyssey on the highway with Qureshi in the front passenger seat and her sons S.F., age fifteen, and J.F., age six, in the backseat.  Qureshi began arguing with K.F.  Without warning, Qureshi grabbed the steering wheel, causing the Odyssey to strike

a pole. J.F. was ejected from the Odyssey and sustained multiple blunt force injuries and died.

¶6            A grand jury indicted Qureshi on one count of manslaughter and two endangerment counts, all dangerous offenses. In February 2019, the case proceeded to trial. When the superior court began the jury selection process, Qureshi made the following outburst in front of the potential jurors:

> The prosecution thinks I'm a Muslim terrorist, the prosecution thinks I'm a Muslim terrorist, that's what the prosecution thinks. The prosecution thinks I'm a Muslim terrorist. . . . I'm out. Take me out. I'm ready to go back. The prosecution thinks I'm a Muslim terrorist, everybody. That's what the prosecution thinks.

At the request of defense counsel, the court excused the jury panel, and the trial began again the next day with a new panel of jurors.

¶7            On the fifth day of trial, defense counsel filed a motion to withdraw. The motion cited multiple ethical rules including Arizona Rules of the Supreme Court 42 ER 8.4(a) (it is professional misconduct for a lawyer to violate or attempt to violate the rules of professional conduct or knowingly assist another to do so), ER 8.4(c) (it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation"), and ER 3.3(a)(3) ("[a] lawyer shall not knowingly offer evidence the lawyer knows to be false"). Defense counsel told the court that Qureshi had demanded that he do something at trial that would violate these ethical rules. In addition, defense counsel indicated that Qureshi had made over 100 harassing phone calls to counsel and had threatened to kill counsel's wife. Counsel stated that he believed Qureshi made the threat to cause a mistrial.

¶8            When the court asked Qureshi whether he understood that his attorney had filed a motion to withdraw, Qureshi stated that he did not understand the motion because he was "out of touch with reality" and did not know if he was "asleep or awake when [he] hear[d] things." Qureshi told the court that he wanted to discharge defense counsel because counsel had refused to watch a YouTube video that Qureshi wanted to introduce at trial entitled "Should the World's Youth Drive," which advocated for the driving age to be lowered to ages 9-12. Before taking the motion under advisement, the court discussed the possibility of Qureshi representing himself, and Qureshi stated, "I'm out of reality . . . I take no responsibility

[for asking defense counsel to engage in unethical behavior] because I don't know what is right or wrong . . . I don't mind representing myself nonetheless." Qureshi then interrupted the court, stating, "So I like Hitler because he brought the Autobahn to life." The next day the superior court granted counsel's motion to withdraw and declared a mistrial.

¶9 Qureshi was retried later that year, represented by new counsel. Qureshi sought to represent himself, and the superior court denied the request. During the trial, Qureshi handed his attorney a note stating, "Mr. Linnins, withdraw or meet your demise." Linnins filed a motion to withdraw, and the superior court denied the motion.

¶10 The jury convicted Qureshi as charged and found as aggravators the use of a dangerous instrument and physical, emotional, or financial injury to the victims. The superior court sentenced Qureshi to 4.5 years in prison for each count of endangerment, and twenty years in prison for the manslaughter count, all to be served concurrently. The court ordered the sentences to be served consecutively to the sentence in CR2013-427046. Qureshi timely appealed, and we have jurisdiction. We consolidated Qureshi's appeals.

**DISCUSSION**

I.      Self-Representation in CR2014-001042

¶11 Qureshi first argues the superior court erred by denying his request to represent himself in CR2014-001042 because he had been found competent to stand trial in Rule 11 proceedings and had demonstrated an ability to make arguments on his behalf. We review a superior court's ruling that a criminal defendant is not competent to represent himself for an abuse of discretion. *State v. Ibeabuchi*, 248 Ariz. 412, 416, ¶ 15 (App. 2020). "We look to whether reasonable evidence supports the superior court's finding," and "consider[ ] the facts in the light most favorable to sustaining the superior court's ruling." *Id.* "[R]egardless of the standard of review, an erroneous failure to accord a defendant his properly asserted right to represent himself when he is competent to waive counsel in a criminal case is structural error requiring reversal without a showing of prejudice." *Id.* (internal quotation omitted).

¶12 The United States and Arizona Constitutions recognize a criminal defendant's right to waive counsel and represent himself. U.S. Const. amend. VI; U.S. Const. amend. XIV; Ariz. Const. art. 2, § 24. The right of self-representation is not absolute, however. *Indiana v. Edwards*, 554 U.S. 164, 171 (2008). In *Edwards*, the United States Supreme Court

considered whether "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under [*Dusky v. United States*, 362 U.S. 402 (1960)] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178. The Court answered the question in the affirmative, concluding that judges may take realistic account of the particular defendant's mental capacities by asking whether he is mentally competent to conduct his defense at trial.[1] *Id.* at 177-78. The Court called these defendants "gray-area" defendants. *Id.* at 172-73. "[W]hile a defendant need only show the ability to rationally communicate with counsel and a rational and factual understanding of the proceedings to stand trial to represent himself at that trial, the superior court may require that the defendant also have sufficient ability to manage the most basic of trial tasks." *Ibeabuchi*, 248 Ariz. at 417, ¶ 18 (citations omitted). "[P]ursuant to *Edwards*, when a criminal defendant is mentally competent to stand trial, but not mentally competent to conduct that trial or hearing himself, the superior court may, in its sound discretion, deny the defendant the right to represent himself." *Id.* at ¶ 19.

**¶13** Citing *Edwards*, the superior court found that Qureshi was not competent to represent himself. The court noted that Qureshi had a lengthy history with the court and had been evaluated in Rule 11 proceedings and diagnosed as seriously mentally ill. The court noted that Qureshi's past behavior in the courtroom had been uncontrollable, Qureshi did not understand the rules of evidence or procedure, and the court believed Qureshi would continue to seek to introduce matters that were not relevant. The court further stated

> [G]iven the totality of the circumstances in this matter, including the timing of the request, including the history of the number of attorneys that represented the defendant in this case . . . all of whom had to withdraw from the case due to the defendant's behaviors . . . the Court has no confidence that the defendant can properly and competently try this case.

---

[1] The *Edwards* Court quoted with approval an amicus brief filed by the American Psychiatric Association which explained that "'[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant.'" 554 U.S. at 176.

The court denied Qureshi's request to waive counsel.

¶14        The record contains sufficient evidence to support the superior court's ruling that Qureshi could not represent himself competently.   The same superior court judge presided over both of Qureshi's cases and was well aware of Qureshi's mental health history and courtroom behaviors.

¶15        In Qureshi's first trial in CR2014-001042, even though counsel represented him, Qureshi sought to introduce an irrelevant YouTube video about children driving and then caused the superior court to remove an entire jury panel when he made an outburst in front of the jury.  The court had to admonish Qureshi multiple times, and at least once, Qureshi refused to be transported for trial.  Qureshi asked his attorney to engage in unethical behavior and harassed the attorney, causing the attorney to file a motion to withdraw.  The attorney believed Qureshi was intentionally trying to cause a mistrial.  Qureshi told the court that he did not understand the motion to withdraw because he was "out of touch with reality."   He then made a nonsensical argument about wanting to fire his attorney because the attorney would not watch his YouTube video about the merits of young children driving.  The court once again had to explain the video was irrelevant.[2]  During this discussion, Qureshi told the court, "I'm out of reality . . . [but] I don't mind representing myself nonetheless."  He then made an outburst about admiring Hitler.  The court ultimately granted the attorney's motion to withdraw due to Qureshi's unethical requests and threats and declared a mistrial.

¶16        At a status conference before the second trial in CR2014-001042, Qureshi told the court he wanted to represent himself and attempted to introduce an untimely *pro per* motion to dismiss, despite being represented by counsel.

¶17        On the first day of trial, the superior court admonished Qureshi about his outbursts, but he nevertheless continued to argue with the court and make outbursts throughout the trial.   The court also admonished Qureshi for staring at a victim's family members and showing photos to the jury.  Similar to what happened in the mistrial, Qureshi

---

[2]        Qureshi told the court he thought the video was relevant "[b]ecause the accident involved the fatality of an underage person [six year-old J.F.], and I do believe the video shows how it can be safer for everybody to drive. So I think it would be a mitigating factor and favorable aspect the jury can review."

caused his new attorney to file a motion to withdraw and threatened the attorney's life midway through the trial. The superior court denied the motion to withdraw and Qureshi's motion to waive counsel and represent himself. The trial continued with additional interruptions and behaviors from Qureshi, including harassing a victim, calling the judge a racist, sliding onto the floor, threatening self-harm outside of the presence of the jury, and stating he demanded the death penalty in front of the jury. The superior court had to remove Qureshi from the courtroom at least four times during the trial.

¶18            Qureshi was often non-responsive and ill-behaved in the courtroom, causing his removal from proceedings. In addition, he told the court he was out of touch with reality on multiple occasions during courtroom proceedings. Qureshi persisted in trying to introduce irrelevant evidence even after being advised by the court that it was not relevant, attempted to file an untimely *pro per* motion to dismiss, and did not understand his attorney's motion to withdraw, thereby demonstrating a lack of understanding of rules of evidence and procedure. By denying Qureshi's motion to represent himself, the superior court ensured that Qureshi received a fair trial and helped maintain the proceedings' integrity. *See Edwards*, 554 U.S. at 176-77. On this record, we cannot say that the superior court abused its discretion.

II.     Admission of YouTube Video "Speedometer Pushed Towards the Edge"

¶19            Qureshi next argues that the superior court erred by admitting into evidence in CR 2013-427046 a YouTube video showing Qureshi driving over 100 miles per hour on the highway. We review the superior court's evidentiary rulings for an abuse of discretion. *State v. Leteve*, 237 Ariz. 516, 523, ¶ 18 (2015). We review de novo the interpretation of the rules of evidence. *State v. Payne*, 233 Ariz. 484, 502, ¶ 49 (2013).

¶20            Before the trial, Qureshi filed a motion to suppress the introduction of seven YouTube videos made by Qureshi showing him speeding and driving recklessly. Qureshi argued the videos were inadmissible under Arizona Rules of Evidence ("Rules") 403 and 404. After a hearing, the superior court reviewed the videos and denied Qureshi's motion to suppress in part, ruling that the State could introduce two of the seven videos.

¶21            Qureshi filed a second motion challenging the admission of the videos, and in addition, evidence of a collision Qureshi caused in Pinal

7

County.[3]   The court found that evidence of the collision was relevant, probative, and "tends to negate any notion that his actions were a mere mistake or accidentally undertaken."  The court found that the probative value of the evidence of the Pinal County accident outweighed any prejudice.  However, the court only allowed the State to introduce one of the two YouTube videos of Qureshi's reckless driving after finding that two videos and the evidence of the Pinal County accident would be cumulative.

**¶22**        During the trial, the State introduced one YouTube video entitled "Speedometer Pushed Towards the Edge."  The video, recorded inside a vehicle, showed Qureshi driving over 100 miles per hour on a freeway.  The video provided a view of the freeway over the steering wheel from the driver's perspective and panned down to show the dashboard speedometer.

**¶23**        Qureshi argues that the superior court erred by concluding that the YouTube video was admissible under Rule 404(b).  Relevant evidence is generally admissible.  Ariz. R. Evid. 402.  "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Ariz. R. Evid. 401.  Rule 404(b) generally precludes "evidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."  Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Ariz. R. Evid. 404(b).  The list of permissible purposes is not exclusive.  *State v. Wood*, 180 Ariz. 53, 62 (1994).

**¶24**        The YouTube video showing Qureshi intentionally driving at a high rate of speed was admissible to establish the absence of a mistake or accident when he drove at a high rate of speed and crashed into T.K. nearly head-on.  It was also relevant to rebut Qureshi's claim to law enforcement that the collision could have been caused by a problem with his vehicle's tires rather than his driving behavior,[4] and to refute his claim that his

---

[3]        Qureshi does not challenge the superior court's ruling concerning the Pinal County accident on appeal.

[4]        On cross-examination defense counsel elicited testimony from Detective Stefan Springstroh that Qureshi believed the collision could have been caused by a problem with his vehicle's tires.

driving on the night of the accident was involuntary as raised in his noticed defense of involuntary intoxication. We find no abuse of discretion.

III.    Motion to Disqualify MCAO in its Entirety

**¶25**        Finally, Qureshi argues his due process right to an unbiased prosecution was violated and that the superior court committed structural or fundamental error by failing to disqualify the entire Maricopa County Attorney's Office ("MCAO").

**¶26**        The superior court held a pretrial status conference for both of Qureshi's cases in 2018. Before the conference, the prosecutor passed Qureshi in the hall, entered the courtroom, and told defense counsel, "Every time I see your client, he looks more and more like a Muslim terrorist." The prosecutor made the statement in front of court staff and other attorneys. The judge was not yet on the bench, nor was Qureshi in the courtroom, and defense counsel did not raise the matter during the status conference. Subsequently, Qureshi filed a motion to dismiss both cases with prejudice. MCAO removed the prosecutor from the case and reassigned the matter to other MCAO attorneys.

**¶27**        At oral argument, Qureshi argued if the court did not dismiss the case, it should remove MCAO. The superior court denied the motion to dismiss. The court noted that the prosecutor had been removed from the case, that the statements had been made on a single occasion, and they had not been made on the record. The court found that Qureshi had failed to show a denial of his due process rights

> as a result of the statements by [the prosecutor]. Those statements and any underlying bias have not been shown to have been adopted by the Maricopa County Attorney's Office. The Court agrees that the statements are indicative of a biased and bigoted mind. AS such this Court believes they violate the Code of Professional Responsibility and this Court will refer this matter to the State Bar at the appropriate time. The evidence is that the bigotry is solely in the mind of the attorney who uttered the statements. The Court further finds that in these unique circumstances, any notion or perception of bias can be cured through the process of voir dire.

The court further found that neither a change of venue nor a transfer of prosecution to another agency was required. Qureshi filed a motion for reconsideration, which the superior court denied.

**¶28** Qureshi argues the prosecutor's conduct tainted the entire MCAO, removing the prosecutor from the case was an insufficient remedy, and disqualifying the MCAO was needed to cure an appearance of impropriety. He further argues the State's unwillingness to make Qureshi plea offers demonstrated that the prosecutor's bias infected the case.

**¶29** We review a ruling on a motion to disqualify counsel for an abuse of discretion. *Villalpando v. Reagan*, 211 Ariz. 305, 307, ¶ 6 (App. 2005). "Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent. The burden should be upon the moving party to show sufficient reason why an attorney should be disqualified from representing his [or her] client." *Alexander v. Superior Court*, 141 Ariz. 157, 161 (1984) (citations omitted). "Without question, certain prosecutorial conflicts may implicate due-process concerns, and a court does have the authority to disqualify a prosecutor or prosecutor's office for a conflict of interest." *Villalpando*, 211 Ariz. at 308, ¶ 8 (citations omitted). "A defendant does not state a claim for a violation of his due-process rights, however, unless the conflict is so severe as to deprive him of fundamental fairness in a manner shocking to the universal sense of justice." *Id.* (internal quotation omitted).

**¶30** We find no violation of Qureshi's due process rights. Qureshi did not establish that any other MCAO attorney was biased or shared the original prosecutor's views about him. MCAO removed the prosecutor and disavowed the comment as "inappropriate, unprofessional and discriminatory." There is no indication in the record that the prosecutor had any further involvement in Qureshi's cases, and the comment was made outside of the juries' presence. *See, e.g.*, *In re Gentry*, 316 P.3d 1020, 1033-34 (Wash. 2014) (prosecutor's racist comment made outside of the jury's presence was not an intentional appeal to racial bias that could have affected the jury's verdict and prejudiced the defendant). Although Qureshi argues that MCAO mistreated him because it did not give him a plea offer, it is well-established that there is no constitutional right to a plea bargain. *See State v. Donald*, 198 Ariz. 406, 413, ¶ 14 (App. 2000). We find no abuse of discretion.

## CONCLUSION

¶**31**    We affirm Qureshi's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA